Opinion op the Coefut, by
Judge Mills.
Thomas L. Bdtlep. and William S. Waller, filed their bill, alleging tiiat in the year 1794, Benjamin Craig purchased of William Peachy, of Virginia, two thousand acres of land at the mouth of Kentucky, and stipulated to pay the purchase money in three instal-ments, part of which was paid, he, the ’ said Peachy* holding the legal estate, and retaining a lien for the purchase money, having given his bond to convey, with sundry stipulations to enforce punctual payment; that about the year 1796, Marlin Hawkins became interest-ec^ sa'd l;l!1d, by a written contract with Craig, which interest was afterwards confirmed byr a decree of the Franklin circuit-court, rendered in 1804; that Haw-being thus interested, sold about seventy-two acres oi sa'd trnet to certain John landy, and i atidy sold the same to Job Brockman, all verbally,- and that Haw- *197 a» sa mfe im Aft; bond of, rí.rt'rt' ’ *■*«&« f¿»Wfc»>l ioTlmmas'C;'LiéWif;i&Kd to ... , . , Mártir;. Hawkins ;-.;Ü^t,i^éí¿js;-,.aS'signeá l^s interest m, said lai$^ 'rhodnas:Ca«ícó;M|^|:b^' and assigned-the same-to the ,.compramanJS^ciayvHiai% cpi-ygd all the, purchase money except,ia.:potrlfion,'.l^|i,'OTlmits their hands to discharged,balance due,Leachjq proportioa¡of §aid balance on,‘the saiise^yent^^p^nSb-that Craig having.failed to pay ¿Peachy, the Leaphy commenced his.su,it ir; eKancery-.'ip' t)\<p(^j|ar ^ascircuit court,¿d enforceable Í¡e¿ againstláWdf ¿ndi,5Íjeaftrd¡ngI.y,.io'’1.810, obtained a la^,, which was done by a commissioner ,appoint§^f-Jy said court, and John M’Kinley, who.was the &ge,iU, apd, attorney .of Peachy’s executor, became the purdKasénóf hpwards of fourteen hundred acres of the origi nal-tract, including the aforesaid seventy-two acres; but fh’htiw the sale, it was agreed that said John M’Kinley should become the purchaser, and should convey to al’L thpse persons who had equitable claims under the.said,-J&en-¿íjiftip Craig, or Martin or James Hawkins,,updfpited^ paying-to him at the rate of $2 43 per acre, the balance due Peachy’s estate amounting to that sum when avér-aged upon thé quantity sold; that accordingly all those sub-purchasers stood by and did not hid, trusting’td¿lhe representations of said M’Kinley; but that the said M’Kinley had refused to convey to them thfc said.seven-iy.-two acres, although they tendered .to him the/ull iunountof the money due Upon the aforesaid seventy-t-wo aeresyand he had refused to receive il, and gave a written alfenpwledgment of .the tender and his reíusal, and has so-ldí.amd'conveyed a large tract, including said seventy-two atíi'ds, to a certain Lewis Eastcrday, who had fujl Mtowiedge and notice of all the foregoing circum-stemabr,-and who refused to convey the land to them» tphey make Carrico, M’Kinley and Easterday defdn-dants, and pray a decree for the conveyance of .the land ■pip, their paying the monejq and if this cannot be had, steerec aga-inst Carrico for what théy .havepaid him,.
to merely ad-the right admitting ’ to be |™- ai^a®e-n" fcSt’and"no-more,
•‘.-.Jlisterday a-nswereika-nd faintly denies notice of.fhe equity .Reid by the vender-pf the (eArap!ai.Qan.isv.alleges that.Jii^'pvVrchase was .befqrh ...that of the complainants íyiphí %mi£Oj and fhat theyhadinotifie-qf his purchase *198 of M’Kjnley..- ¡He-profeses bis ignorance arid ’ rehires proof ofLthe’ transfers-and transaciTori&alléged irithe mil, witífréspeet & the‘seventy-twtí^ac'res’5'a)iñ’resists a
Ca rrjcs. ji n s we re d, coti'cri-rring with the complainants ip their' statements made in the bill; admits his liability to refund what he has received, if the complainants fail in obtaining- the land; and insists that they have a right tbjg. decree for the land.
. ''M’Kinley, though subpoenaed, failed to answer the bill, and as to him it was taken as confessed.
The circuit court decreed that M’Kinley and Easter-, day should both convey, arid release their legal title id** the complainants and pay costs, upon the complainants’ paying or tendering the, $2 43 per acre.
To reverse this decree this writ of error is prosecuted, and it is insisted that the decree is erroneous on its merits.
- It does not appear from the bill what kind of an agreement was entered into by M’Kinley, - whether written or verbal, or how long he was to wait with the purchasers, or with whom he made the agreement, whether with the individual holders who held parcels under Craig, or with one of them for himself and the rest.' Indeed, so loosely drawn is the bill in this respect, it would seem from that part of it which speaks of his representations, that they were the loose declarations of M’Kinley at(the time, designed only to silence the purchasers. If the bill was well enough framed in this respect, although the chancellor might not think himself authorised to coerce the agreement specifically, he might possibly give some relief to those interested in the land, on account of fraud in the sale, and the sacrifice made by thus silencing the purchasers. Butwith-out determining on this matter, when we travel into the proof, it appears that the contract or engagement on the part of M’Kinley, was with Benjamin Craig, ápd was reduced to writing. Craig deposes that a time was fixed within which the portions of the different purchasers were to be discharged, and that time he could ►not remember, nor did he know what had becoriie ofthe writing. Thus, it appears that the claim against M’Kinley arises, not out 6f, any fraudulent conduct on his part, but presents '-itselfin the attitude of a positive contract,, and if the complainant's succeed, they mil’s! á'o it by having that contract specifically enforced.
*199 t&firnHUijgi bill'. is' ~*í.1t¿-t *« '■■'•'tfosLuiAh- a* (sÍaiirn...&'¿feiVSS&;í<árfl.rai'íi!(irn'£>’ ^íépt tijt,sgg^^¿ÍV e|a^n.r%^jilMi}MffiríÉin'g tlie^géÁullie'keffi^ta1^ exhti5i'ts^fite;d^re^)^&^^tlie^a-; fe$Veuih,g puücljasefVetvszeen >p^aig.,aR€i^^'‘caínpfa^ií->]gpf>í ptel'eyj^tájing is. .recj.uijpei' í¿jfte pn^er-of Eé^^ayj.ljhft’e. is still-a'cfyasihoin ,>the •B^SpIs a¿™ superable. difficulty Wa?,recovery Jéf tifié lam.^TOf.pbtaia tpp benefit of the..confeápfc^betwfeeá' É/pfi|gand M’Kínley, it, #as neGe.§sary¿>at-, tlie-cotn-¡•i-n'-fact pu roháséys- ,-and that íhe'yr®-<i ... . . . .. .. - - - - iA'., held uader.^hip.alí í.the, equity, which' he-cffl'd'f. jo, do t$$4.!)ey,.hawe showed, ^ritingg¿tagc£'a %W-d^crée^e^idencing'á^ontract between Craig andsl kmfeiand between Hawkins ;yid Brockman.' ''' haw&mso shown written transfers from Lew-is. to Carri-co, arid from Carrico to themselves. B.ut theye is*m> written evidence, nor indeed competent parol testimony, of.any sale from Brockman to Lewis,Ivhich was indispensable to show their title to Craig’s contract. It il/ti;ue,,íhat i¿i the year 1818, M’Kinley gave a written acknowledgment of a tender, in which he recites that onp of the complainants produced to him a 4>ond frórú, Hpjvkips to Brockman, and by Brockman ássigned fo Lewis. Bui the exhibit filed has no such assignment; so that.either this must have been a mistake of M’Kin-ley in describing the paper, or the bond filed is not the same. Besides, this acknowledgment of M’Kinley was made nearly seven years afterhissale to Easterday; so that any acknowledgment he might then make, could not prejudice Easterday.
A.further valid .objection to coercing this contract specifically, is, its precise terms are not known. It is notfexhibited or shown to be lost, nor is there the slightest suggestion in the pleadings, that it could not be obtained. This creates a presumption against the com-pla>ina¡nts, that it did not suit their purpose, or they would have made proper exertions to produce it.
If these objections could be gotten over, and we take the proof as it is,, it is shown that a time was set by the writing, in which the money should be paid by the several purchasers- If we are to come at this time by conjecture, (for we have no other mode,) it is not probable that M’Kinley, who had to account for the money to his employer, the executor of Peachy, agreed to wait eight *200 years for'%^;iPftT¿|ia§.®íi?s-’üÉdé^K5ij'g'^baíi.^k'e priitfoa* 're^eetixé^f'%i^ai»3^1i^!fength ’^j^iíd^dí^lised after the» @íne' oifejgoiitrac-t;- BefbtéVttó-kiocsíy ^8 .pf-fered ^l¡f^i«§¿&i»e$£.Q cages of-specific perfbrmailce, must- b'e'íPíilsnál'd -toy.ánd if suffered tlelapse, it m.ps.bbe shown t'bgjHt waS'w-ai.ved: by tfffe contracting party, or some-good'Axcüseqrius.f be offered for-suffering.it to eíctpse¡ ' AvySre.ref.this principle, the complainants have -presented ahjúgxcusé'for the'deiay, which -will.-be con-sfclere'd.. *TBey allege that they and Carrico, tbe-iryen-ffere Sdvised that the suit b.y Peachy’s executor ag|inst Craig,' toppfdrcb the lien against the fand,yvas not regular, becau-sfe the heirs of Pbatíhy-were not parties','and, .therefore, by the sale, M’Kinley-could -not acquire' the-le’g-al title, but afterwards had- to pros§g.ute ahbther suit againgt the heirs for the title, and that-mey withheld the money until the event of this second suit was known, and so soon as this was decided in M’Kin-ley’s favor, they then tendered the money. Upon examining the date of the decree in favor of M’Kinley against the heirs of Peachy, we discover (pat the complainants permitted five months to elapse after the de-against Peachy’s heirs, before they made the offer of the money. But, admitting for a moment, that they could surmount this delay, the question remains, was it proper that they should suspend therr part of the eon-triket until this suit of M’Kinley against Peachy’s heirs was tried? We conceive not. They, or those under whom they claim, appear to have been no strangers to the suit and decree of Peachy’s executor against Craig. M’Kinley does not appear to have been guilty of any concealment in this respect. It was evident, from any ■thing that appears, they were as sensible then as now, that the sale under a decree in favor of the executors, would not pass the legal estate. And it is equally clear, that it passed a valid equity, which could be sold;.and they bought it, or Craig bought it for them, they were bound to pay before the legal title was obtained, if their contract required it. M’Kinley was, by contract, to become purchaser for them, and thereby laid himselfimmediately liable to Peachy’s executor, resting upon the sub-purchasers under Craig to furnish the money. It would be placing M.’Kinley under circumstances of peculiar hardship, to leave him to pay up |he .money to Peachy’s executor, and to permit the tenants *201 «jetain what they ■yi&ije. to filrnigh’,- until he acquired Jffegal estatóby á tedious,suit,. whieÜVtitJe they orí-•gjnally knew life gíid no.t afcqujre by the, pyirchhse Triad e for them, and after all this laps^oftijA©.,-to1'compel him to surrender the title. • If. they failed, in paying their proportions, it was ju%t 'thatjM’Kinley should he permuted to, make his mo^eyoufof the land byydisp.o^ing of it to other purchasers, as he did to Easterday. The sale under the decree pissed a:i equity., superior to that derived from Craig through HawlBhs, and cquld only be overreached by the contract of M’Kinley at tire sale. This contract, so far as we, can, ascertain R^jwas violated by-Uhe dlfeplainants or ¡some of thé previous ■holders of their interest, and M’Einley was justifia’ble in Ihig to Easterday, who, now.holding under him, must fplthe land, and the decree of the court below in their - favor, cannot be sustained. But as in case of failure in obtaining the land, they pray a decree against Carrico ■ for the money1' paid him, and he admits fhe amount and .^his liability to refund in that event, they will be entitled toa decrcqagainst Carrico for the money-received by him with its interest.
The decree must, therefore, he reversed With cosfg,' and the cause be remanded with* directions to the corirt bfefow to dismiss the bill with costs as to Easterday and M’ICinlp}', and to render a decree against Carrico for the money paid him, with interest from the tithe o£gay-nient.